Dawn McCraw, Esq.
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
Phone: (818) 600-5585
Fax:    (866) 683-3985
Email: dawn@pricelawgroup.com

Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:  (732) 695-3282
Fax:    (732) 298-6256
Email: yzelman@marcuszelman.com
PRO HAC VICE TO BE FILED
*Attorneys for the Plaintiff, Richard Kerns*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **RICHARD KERNS,** | Civil Case Number: |
| **Plaintiff,** | |
| -v- | **CIVIL ACTION** |
| **EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC. and BMW FINANCIAL SERVICES,** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

## INTRODUCTION

1. Plaintiff, Richard Kerns, brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Defendant BMW Financial Services ("BMW") has been negligently, recklessly and knowingly reporting false information regarding the Plaintiff to the national credit reporting agencies, and that Defendant failed to investigate

-1-

   credit report inaccuracies in response to Plaintiff's disputes.

2. Plaintiff further alleges that Equifax, Experian and TransUnion have negligently and recklessly disseminated false information regarding the Plaintiff's credit, even after Plaintiff notified them of these inaccuracies.

3. Plaintiff further alleges that Equifax, Experian and TransUnion failed to follow reasonable procedures to ensure maximum accuracy of credit reports it prepared concerning Plaintiff and failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

4. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

5. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendants regularly conducts business within the state of Montana, and violated Plaintiff's rights under the FCRA in the State of Montana as alleged more fully below.

6. Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this district, Defendant conducts business in this district, and communications giving rise to this action occurred in this district.

## PARTIES

7. Plaintiff, Richard Kerns ("Plaintiff"), is a resident of Kalispell, Montana, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8. Defendant BMW Financial Services (hereinafter referred to as "BMW"), is based in Hilliard, Ohio and is the financing division of the BMW Motor Group family of companies.

9. Defendant Equifax is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning

hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

10. Equifax is a limited liability company with its principal place of business at 1550 Peachtree Street & One Atlantic Center, Atlanta, Georgia.

11. Defendant Trans Union is also one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

12. Trans Union is a company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

13. Defendant Experian is also one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

14. Experian Information Solutions, Inc. is a corporation incorporated in the State of Florida, with its principal place of business located in Costa Mesa, California.

## FACTUAL ALLEGATIONS

15. Plaintiff is a former BMW customer, who leased a BMW vehicle on April 9, 2014 from the Pacific BMW dealership in Glendale, California.

16. Pursuant to the Lease Agreement, the Plaintiff leased a 2014 BMW 5 Series sedan for 36 months, which lease term was set to expire on April 9, 2017.

17. In November of 2016, the Pacific BMW dealership reached out to the Plaintiff and offered to take the Plaintiff's vehicle back in exchange for getting the Plaintiff into a new lease for a new vehicle.

18. Unfortunately, around that time, the Plaintiff fell off a roof and was awaiting neck surgery, so he could no longer drive.

19. Plaintiff therefore reached out to BMW and asked if he could simply turn the vehicle in early, explaining that he had been injured and could no longer drive.

20. Plaintiff was advised by BMW that he could turn the vehicle in early if he made one more monthly payment.

21. Plaintiff then made that final monthly payment.

22. On December 13, 2016, Plaintiff had the vehicle serviced, and then his wife turned in the vehicle in perfect condition, to Shelly BMW in Buena Park, California.

23. Prior to leaving the vehicle at Shelly BMW, Plaintiff's wife confirmed with both Defendant and Pacific BMW that she could turn the vehicle in at that dealership.

24. Pacific BMW specifically advised the Plaintiff's that it would simply pick up the vehicle from Shelly BMW as it had vehicle deliveries in that area all the time.

25. At all times, Plaintiff timely paid all amounts due and owing to BMW and never fell behind on any obligations to BMW.

26. Nonetheless, the Plaintiff subsequently noticed that BMW was reporting that (1) he owed $16,736.97 on this vehicle, (2) that this vehicle had been repossessed, (3) that the account had been repeatedly late, and that (3) the account had then been charged-off.

27. The Plaintiff owes no balance to BMW.

28. The Plaintiff certainly does not owe $16,736.97 to BMW.

29. Nor was any of this other negative reporting accurate, as Plaintiff had timely made all his payments and had turned in the vehicle as agreed.

30. On October 18, 2021, the Plaintiff accordingly wrote to Experian, Equifax and TransUnion, disputing this inaccurate credit reporting, and specifically advising the Defendants that:

> On November 17, 2016, I received a letter from Pacific BMW (enclosed) from Sevak Adamyan the Director of sales. This letter was account status of 5 payments remaining and a early trade in bonus offer. I reached out to the Director of sales explained I had fallen off a roof and was scheduled for neck surgery in January 2017 and would like to turn in my vehicle early it was low on miles. He was very happy to help and asked me to call BMW financial services and start the process. I called the customer service department at 1-800-578-5000 and spoke to BMW about the early lease turn in. I was told I would need to make 1 more payment to be eligible for the lease turn in. I borrowed the money and made the $930.00 payment and as agreed on December 13th, 20016 and turned in the was vehicle. I was unable to drive due to my medical condition at the time and my wife brought the car to the Shelly BMW dealer closest to family since we moved about 90 miles away. BMW customer support contacted the Shelly BMW the dealer in Buena Park, CA by phone to arrange the lease turn in and since the local dealer did not want to process the early lease turn in so BMW said they would then arrange for the tow to Pacific BMW to process the lease turn in and not to worry about it they went out that way often. BMW reassured me everything would work out.
>
> The car was serviced and both keys and owner's manual turned in with the car in December 2016.
>
> Subsequently I learned at a much later date the local dealer had the car

> picked up and sent to auction with no written notice to me. I guess Pacific BMW had not picked up the vehicle timely. I have only ever received one phone call from BMW on this matter I explained it to BMW collection, and I was told this would be removed and an apology was given.
>
> Per my contract it states that the most I can owe is the remaining lease payments plus a $350.00 disposition fee.

31. The Plaintiff's dispute letter was delivered to Experian on October 21, 2021, as confirmed by the tracking number in the Plaintiff's possession.

32. The Plaintiff's dispute letter was also delivered to Equifax on October 21, 2021, as confirmed by the tracking number in the Plaintiff's possession.

33. The Plaintiff's dispute letter was then delivered to Transunion on October 23, 2021, as confirmed by the tracking number in the Plaintiff's possession.

34. Upon receiving these dispute letters, Experian, Equifax and Transunion each notified BMW about the Plaintiff's disputes.

35. Defendant BMW refused to investigate Plaintiff's dispute or to correct its inaccurate reporting.

36. Instead, to this day, BMW is inaccurately reporting that the Plaintiff was 30 days late on his payments in October, November and December of 2016, that the vehicle was 60 days late in January of 2021, that the vehicle was 90 days late in February of 2017 and that the vehicle was repossessed in March of 2017 – none of which is true.

37. As a result, Experian, Equifax and TransUnion failed to correct this negative and inaccurate information which was hurting the Plaintiff's credit.

38. As of January 10, 2022, the Plaintiff's credit report continues to reflect this damaging and negative information.

39. At all times pertinent hereto, Defendants' conduct was willful, and carried out in reckless

disregard for a consumer's rights as set forth under section 1681s and 1681i of the FCRA.

40. As a direct and proximate result the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life as a result of the impact this inaccurate reporting has had on his credit score and reputation. For example, Plaintiff desperately needs a Home Equity Line of Credit to help care for his elderly mother but cannot obtain that HELOC, due to the false and negative BMW information being reported by Defendants. Moreover, the Plaintiff has had at least one credit card account closed because of the Defendants' negative reporting.

**COUNT I**
**FAILURE TO INVESTIGATE DISPUTE**
**15 USC § 1681s-2(b)**
**AGAINST BMW**

41. All preceding paragraphs are re-alleged.

42. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

43. In October 2021, Plaintiff submitted a written dispute to each of the three credit bureaus disputing the accuracy of the balance being reported by BMW.

44. As evidenced by their responses to the Plaintiff, BMW received these disputes.

45. BMW was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

46. BMW failed to reasonably investigate Plaintiff's dispute, as evidenced by BMW's on-going failures to correct Plaintiff's account information despite having all the information necessary to reflect that this information was not being accurately reported.

47. BMW's conduct violated section 1681s-2(b) of the FCRA.

48. Defendant's conduct was both negligent and willful, when the Plaintiff specifically and

repeatedly informed the Defendant that its reporting was inaccurate, and where the Defendant repeatedly refused to correct its patently inaccurate credit reporting.

49. As a result of the Defendant's conduct, the Plaintiff has been harmed, as explained above.

## COUNT II
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i Against Equifax

50. All preceding paragraphs are realleged.

51. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

52. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

53. Equifax, having either conducting no investigation or failing to conduct a reasonable investigation, verified the inaccurate item on his credit file, even after Plaintiff submitted a detailed and specific dispute regarding the inaccurate information being reported by Equifax.

54. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed.

## COUNT III
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i Against Experian

55. All preceding paragraphs are realleged.

56. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

57. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the

disputed information, the CRA is required to delete that information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

58. Experian, having either conducting no investigation or failing to conduct a reasonable investigation, verified the inaccurate item on his credit file, even after Plaintiff submitted a detailed and specific dispute regarding the inaccurate information being reported by Experian.

59. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed.

## COUNT IV
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i Against Trans Union

60. All preceding paragraphs are realleged.

61. At all times pertinent hereto, Trans Union was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

62. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

63. Trans Union, having either conducting no investigation or failing to conduct a reasonable investigation, verified the inaccurate item on his credit file, even after Plaintiff submitted a detailed and specific dispute regarding the inaccurate information being reported by Trans Union.

64. As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed.

## COUNT V
## FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
## 15 U.S.C. § 1681e(b)

## AGAINST THE CRA'S

65. All preceding paragraphs are realleged.

66. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

67. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff; it would have removed the inaccurate information being reported on the Plaintiff's credit report.

68. Were TransUnion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff; it would have removed the inaccurate information being reported on the Plaintiff's credit report.

69. Were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff; it would have removed the inaccurate information being reported on the Plaintiff's credit report.

70. As a direct and proximate result of their willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

## **DEMAND FOR TRIAL BY JURY**

71. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff statutory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses;

E. Awarding pre-judgment interest and post-judgment interest;

F. A declaration that Defendant's conduct alleged herein is unlawful, as set forth more fully above;

G. Equitable relief, enjoining Defendant from engaging in the unjust and unlawful conduct alleged herein; and

H. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: January 27, 2022

PRICE LAW GROUP, APC

/s/ Dawn McCraw
Dawn McCraw, Esq.
8245 N. 85th Way
Scottsdale, AZ 85258
Phone: (818) 600-5585
Fax:    (866) 683-3985
Email: dawn@pricelawgroup.com

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq. (YZ5857)
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:  (732) 695-3282
Fax:    (732) 298-6256
Email: yzelman@marcuszelman.com
PRO HAC VICE MOTION TO BE FILED
*Attorneys for the Plaintiff*